CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 11 2010

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

VALERIE TODD, )
)  Civil Action No. 7:09cv00113
Plaintiff, )
)  <u>ORDER ADOPTING REPORT</u>
v. )  <u>AND RECOMMENDATION</u>
)
MICHAEL J. ASTRUE, )  By: Judge James C. Turk
COMMISSIONER OF )
SOCIAL SECURITY, )  Senior United States District Judge
)
Defendant. )

## <u>MEMORANDUM OPINION</u>
## <u>ADOPTING REPORT AND RECOMMENDATION</u>

Plaintiff Valerie Todd brought this action for review of Defendant Michael J. Astrue's ("the Commissioner") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). The Court referred the matter to United States Magistrate Judge Michael F. Urbanski for a Report and Recommendation (Dkt. No. 14), pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge subsequently filed such a report, ultimately concluding that the Commissioner's conclusion was supported by substantial evidence and remand was not appropriate in the case (Dkt. No. 21). Plaintiff Valerie Todd timely filed Objections (Dkt. No. 22) to the Report and Recommendation ("R&R"). Having reviewed, *de novo*, the Report and Recommendation, the Plaintiff's objections thereto, and the pertinent portions of the record, the Court **ADOPTS** the Magistrate Judge's R&R, **GRANTS** the Commissioner's motion for summary judgment, and **DENIES** Todd's motion for summary judgment.

<u>I</u>

1

## I. Procedural History

Todd's application for DIB and SSI was rejected by the Commissioner on September 12, 2005. (R. 468.) Her claims were denied again upon reconsideration. (R. 473.) An administrative hearing was convened before an Administrative Law Judge ("ALJ") on October 17, 2006. (R. 590.)

On October 27, 2006, the ALJ issued his decision, finding that Todd was not disabled.[1] (R. 13.) In reaching this conclusion, the ALJ followed the framework of the five-step sequential evaluation process used by the Commissioner. See 20 C.F.R. § 416.920. This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) has the residual functional capacity[2] ("RFC") to return to his or her past relevant work; and (5) has the RFC necessary to perform other work.[3] Id. The ALJ concluded that Todd suffered from several severe impairments, including a back disorder, hypertension, diabetes mellitus, and migraine headaches.[4] (R. 18.) The ALJ also concluded that Todd suffered from several non-severe impairments, including depressive disorder and an anxiety disorder. (R. 21.) The ALJ determined that Todd had the RFC to perform sedentary work. (Id.) The ALJ found there to be a significant number of jobs in the national economy that she could perform, given her current RFC. (R. 22–23.) For these

---

[1] "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

[2] RFC is a measurement of the most a claimant can do despite her limitations, considering the claimant's age, education, work experience, and impairments. See 20 C.F.R. § 416.945(a).

[3] If the claimant is found to be "disabled" or "not disabled" at any point in the five-step process, the inquiry ends there. 20 C.F.R. § 416.920(a)(4).

[4] The ALJ also stated in a heading in his decision that Todd's depressed mood was a severe impairment; however, the ALJ concluded otherwise in his decision. Specifically, the ALJ included depressed mood in a statement of conditions from which Todd suffers, and then stated that "[t]hese impairments are considered "severe" impairments under the Social Security Act and Regulation, inasmuch as they cause significant limitations in the claimant's ability to perform basic work activities." (R. 18.) He then concluded, based on evidence in the record, that Todd's depressive disorder and anxiety disorder "cause minimal functional limitations when completing work-like activities; and are considered non-severe." (Id.)

2

reasons, the ALJ found that Todd was not disabled at any point from her alleged onset date through the date of decision. (R. 23.) The Appeals Council denied Todd's request for review, making the ALJ's decision the final decision of the Commissioner. Todd filed an appeal of the Commissioner's decision in this Court on April 6, 2009.

The Magistrate Judge issued a Report and Recommendation on June 18, 2010. In his R&R, the Magistrate Judge concluded that substantial evidence supported the ALJ's determination that Todd is not disabled from all forms of substantial gainful employment. (R&R 8.) The Magistrate Judge determined that the evidence in the record did not support the argument that Todd's depression or anxiety were severe impairments. (R&R 5.) The Magistrate Judge also determined that, because Todd did not raise her alleged inability to engage in manipulation of her hands as a disabling impairment, she had no basis to argue that the ALJ improperly disregarded that impairment. (R&R 6.) Further, the Magistrate Judge found that there was no evidence in the record that Todd is limited to lifting no more than ten pounds. Because the jobs identified by the Vocational Expert (VE) were all sedentary in level, the hypothetical that the ALJ posed to the VE which included a lifting limit of twenty pounds did not call into question the VE's conclusion. (R&R 6–7.) Finally, the Magistrate Judge determined that there was no conflict between the VE's testimony about jobs Todd can perform and information in the Dictionary of Occupational Titles ("DOT"). (R&R 7.) For these reasons, the Magistrate Judge recommended that this Court affirm the Commissioner's decision denying Todd's claim for DIB.

Todd objects to the Magistrates Judge's R&R and asserts that the Magistrate's conclusion that substantial evidence existed to support the Commissioner's final decision was in error. Specifically, Todd argues that the ALJ erroneously "failed to include any mental limitations in

3

his RFC conclusion" and, correspondingly, his RFC "determination was not supported by substantial evidence." (Pl.'s Obj. 1.) Todd also argues that the Magistrate Judge was wrong in concluding that the ALJ did not err "in failing to consider [her] diabetic neuropathy, which would adversely affect her ability to use her hands for the performance of sedentary work." (Id. 2.) For these reasons, Todd requests that this Court reject the Magistrate Judge's recommendations and instead enter summary judgment in her favor.

## II. De Novo Review of Todd's Claims

Todd's timely objections to the R&R obligate this Court to undertake a *de novo* review of those portions of the R&R to which objection was made. See 8 U.S.C. § 636(b)(1); Orpiano v. Johnson, 687 F.2d 44, 48 (4th Cir. 1982). Although this Court engages in a *de novo* review of the challenged factual findings and conclusions of law of the Magistrate Judge, this does not entail a *de novo* review of the ALJ's underlying decision. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). Instead, judicial review of the Commissioner's final decision regarding disability benefits under the Act is still limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, a reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but it is "more than a mere scintilla of evidence [though] somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

If the Commissioner's decision is supported by substantial evidence it must be affirmed. Hays, 907 F.2d at 1456; 42 U.S.C. § 405(g).

## A. Substantial Evidence Supports the ALJ's RFC Conclusion

The Court's review of the record reveals that substantial evidence supports the ALJ's determination that Todd does not have any mental limitations that are classified as severe impairments. The ALJ did not conclude that Todd does not suffer from any mental impairments; instead, the ALJ concluded that Todd's mental impairments are not severe.[5] (R. 21.) Hence, the ALJ was not obligated to include a mental impairment limitation in the hypothetical question that she posed to the VE.

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989) (citing Chester v. Mathews, 403 F. Supp. 110 (D. Md. 1957); Stephens v. Sec'y of Health, Educ. & Welfare, 603 F.2d 36 (8th Cir. 1979)). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities . . . . [T]he opinion of a vocational expert should be based on the claimant's condition as gleaned from the entire record." Walker, 603 F.2d at 51. Todd argues that the VE's testimony in this case was not based on the entire record. Instead, she argues, the VE's opinion was limited because he could not consider the fact that Todd suffers from severe mental impairments in the form of depression and an anxiety disorder.

Todd's argument lacks merit. First, the the ALJ determined that Todd's depression and anxiety were merely non-severe impairments. Second, and most importantly, the hypothetical

---

[5] See n. 4, supra, for a discussion of the ALJ's consideration of whether Todd's depression and anxiety are severe impairments.

that the ALJ proposed to the VE did, in fact, include a reference to a mental limitation. (R. 608.) Specifically, the ALJ in the hypothetical stated that "[s]he reported chronic back pain, extending down into her legs from [disk protrusion]. There's also hypertension, a history of diabetes type II, headaches, she reports, and a depressed mood." (Id.) Thus, Todd's objection to the hypothetical that the ALJ proposed to the VE is unfounded.

B. **Substantial Evidence Supports ALJ's Omission of Diabetic Neuropathy Symptoms**

Todd also objects that the ALJ erred by failing to consider her diabetic neuropathy, which she argues hinders her ability to manipulate her hands. She argues that she suffers from diabetic neuropathy, and that the record includes references to her "bilateral leg and arm pain, paresthesias in the arms and legs secondary to diabetic neuropathy, right shoulder pain and stiffness, decreased sensation in the extremities, and tingling in the neck." (Pl.'s Obj. 3.) Todd argues that this condition limits her ability to perform sedentary work, which generally requires use of one's hands and fingers. Id. This argument lacks merit.

Todd's claim for disability was not based on diabetic neuropathy or an inability to manipulate her hands and fingers. In her application for benefits, she listed the following illnesses, injuries, or conditions that limit her ability to work: High blood pressure, depression, migraine headaches, diabetes, sciatica, difficulty in sitting, standing, or laying down, and constant pain in her lower back and legs. (R. 61.) Although she listed diabetes as a condition that limits her ability to work, she did not state that this condition manifests itself in an inability to manipulate her hands and fingers. Rather, in the section asking her to explain how her illnesses, injuries, or conditions limit her ability to work, she stated merely that her "lower back and legs hurt all the time. Standing, sitting, or laying it doesn't matter it hurts." (Id.) She failed

6

to mention her alleged inability to manipulate her hands and fingers in the Pain Questionnaire that she completed for the Disability Determination Services on February 28, 2005, and in the Disability Report form that she completed on February 9, 2006. (R. 75, 70.) At the administrative hearing, Todd did not include hand or finger manipulations when listing her impairments. (R. 590–606.) When asked by her attorney why she cannot work, Todd responded that she is constantly in pain in her lower back and legs. (R. 599–600.) When her attorney asked her specifically about her diabetes and her related complications, she explained that the condition is "messing with the nerves in [her] legs" and that she has had pain in her legs since she learned that she is diabetic. (R. 600–01.) She explained that when her blood sugar is high, her symptoms include blurry vision, lightheadedness, and "a nervous feeling." (R. 603.) Her attorney specifically asked her, "[i]s there anything else that affects your ability to work, besides your diabetes, and your leg pain, your back pain, the headaches, and your depression?" (R. 606.) Todd responded, "no." (Id.)

Although Todd argues in her objections that the record shows that her ability to use her hands and fingers is impaired, none of her treating physicians found such a limitation. Todd notes in her objection that a review of systems from a hospital stay in January, 2004 reported that she complained of "tingling in her hands and feet for about two days." (R. 267.) This hospitalization, however, occurred prior to Todd's alleged disability onset date of December 16, 2004. Todd also notes that records from Carilion Internal Medicine ("CIM"), dated December 2, 2003 through September 7, 2005 include documentation of arm pain, paresthesias in the arms secondary to diabetic neuropathy, and decreased sensation in the extremities. (Pl.'s Obj. 3.) Dr. James H. Willig of CIM noted on January 16, 2004 that Todd appeared to have some episodic arm pain that may or may not have been related to her diabetes; however, this visit occurred prior

to Todd's disability onset date. (R. 404.) Likewise, a CIM record from April 6, 2004 reported that Todd complained of some pain in her forearms and palms, but this was also prior to her disability onset date. (R. 387.) Her CIM records from December 16, 2004 onward do not show evidence that Todd reported any pain or tingling in her lower forearms. Dr. Shirish S. Shahane, who performed a physical residual functional capacity assessment on Todd, determined that she had no established manipulative limitations. (R. 424.) Because Todd did not raise such a limitation at the hearing or in her claim for disability, and because no physician has found that her ability to use her hands and fingers is limited, the ALJ was not in error in declining to limit her manipulation of her hands and fingers in making an RFC determination. Accordingly, the Court concludes that the ALJ's decision was supported by substantial evidence, and, therefore, must be affirmed.

### III. Conclusion

For the reasons stated above, the Court will **OVERRULE** Todd's objections, and **ADOPT** the Magistrate Judge's Report & Recommendation. The Commissioner's motion for summary judgment will be **GRANTED** and Todd's motion for summary judgment **DENIED**. An appropriate order shall issue this day.

The Clerk is directed to send copies of this memorandum opinion and the accompanying final order to counsel of record for both parties.

**ENTER:** This _11th_ day of August, 2010

_____
Senior United States District Judge